UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MARGARET M. HAMILTON | CIVIL ACTION NO. 19-1201 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LOWE'S HOME CENTERS, LLC | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 14) filed by Defendant Lowe's Home Centers, LLC ("Lowe's"). Lowe's seeks dismissal as a matter of law of Plaintiff Margaret M. Hamilton's ("Hamilton") claims, which arise out of an alleged slip-and-fall inside the Garden Center of Lowe's. Lowe's maintains Hamilton cannot satisfy her requisite burden of proof under the Louisiana Merchant Liability Act ("LMLA"). Hamilton opposes the motion, namely arguing there are unresolved questions of fact as it concerns the issue of constructive notice. See Record Document 16. For the reasons set forth below, Lowe's motion is **GRANTED**, and Hamilton's claims are **DISMISSED WITH PREJUDICE**.

**I.    Background.**

On December 6, 2017, Hamilton was shopping for a poinsettia plant inside the Lowe's Garden Center. While shopping, she allegedly slipped and fell on cat feces in the Garden Center. There are no pictures of the area after the alleged slip-and-fall and no video of the incident. See Record Document 14-2 (Hamilton Deposition) at 33. Hamilton admitted in her deposition that she did not see anything on the floor before she fell. See id. She further explained that she could not see while she was walking with the poinsettia. See id. at 33-34. Hamilton was simply "carrying the poinsettia and . . . couldn't really see

the ground." Id. at 34.  She did not know about the feces on the floor until after she fell, but could see and smell the feces after she fell.  See id.  Hamilton did not know how the feces got there; does not know how long the feces was on the floor prior to her fall; and does not know of anyone – including a Lowe's employee – that knew how long the feces was on the floor.  See id. at 37.  Hamilton never saw an animal while she was in the Garden Center.  See id. at 36.  She was in the Garden Center for "a little bit longer than ten minutes," but "less than an hour."  Id. at 30.

Michael Copelin ("Copelin"), a Lowe's employee working on December 6, 2017, testified in his deposition that he did not see any animals at Lowe's on December 6, 2017; he did not see any animal feces at Lowe's on December 6, 2017; and, other than the incident involving Hamilton, there were no complaints of animal feces at Lowe's on December 6, 2017.  See Record Document 14-3 (Copelin Deposition) at 47-48.  Debra Calvin ("Calvin"), the Garden Center cashier on the day of the incident, testified in her deposition regarding the events of December 6, 2017:

> Q. And you worked – you started your shift at 9:00 a.m.; is that correct?
> A. Yes.
> Q. Did you see any animals in the lawn and garden center that day?
> A. No.
> Q. Did you see any animal feces on the ground that day?
> A. No.
> Q. Okay.  Did you have any complaints of animal feces in the law and garden center that day?
> A. No.
> . . .

2

> Q. Okay. Had you ever seen animal feces on the ground in the lawn and garden center?
>
> A. No.
>
> Q. . . . Did you ever have any complaints of animal feces on the ground in the lawn and garden center?
>
> A. No.

Record Document 14-4 (Calvin Deposition) at 70-71. Calvin also explained during her deposition that she had taken a break shortly before the incident involving Hamilton:

> Q. So did you notice anything when you walked [back] from your break?
>
> A. No.
>
> Q. Okay. Did you notice animal feces when you walked back from your break?
>
> A. No.
>
> Q. Okay. How long before the incident with Ms. Hamilton was that?
>
> A. I would say within 30 minutes.
>
> Q. Okay. And you did not see any feces on the ground during that 30 minutes?
>
> A. No.

Id. at 71-72. There was also deposition testimony regarding the consistency of the cat feces. Calvin explained that the cat feces was wet and appeared fresh. See Record Document 14-4 at 81. Copelin testified that the cat feces "smeared" and "appeared to be moist." Record Document 14-3 at 48.

After the accident, Hamilton sued Lowe's in Louisiana state court. See Record Document 1. Lowe's removed to federal court on diversity grounds. See Record Documents 1 & 4. Lowe's has now moved for summary judgment and Hamilton opposes,

3

arguing genuine disputes of material fact remain and the case should be tried to a jury. See Record Documents 14, 16, & 17.

## II. Law and Analysis.

### A. Summary Judgment Standard.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Romero v. City of Grapevine, Texas, 888 F.3d 170, 175 (5th Cir. 2018). But the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" Hathaway v. Bazanay, 507 F.3d 312, 319 (5th Cir. 2007).

### B. Hamilton's Negligence Claim against Lowe's.

Subject matter jurisdiction in this matter is based on diversity. Thus, Louisiana tort law applies. In Louisiana, merchant liability for slip and fall cases is governed by the LMLA, La. Rev. Stat. Ann. § 9:2800.6. Section 2800.6 provides:

> In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1)   The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. Rev. Stat. Ann. § 9:2800.6(B). The plaintiff has the burden of proving all three elements under the LMLA; thus, "the failure to prove any is fatal to the claimant's cause of action." Peterson v. Brookshire Grocery Co., 751 F. App'x 533, 535 (5th Cir. 2018), citing White v. Wal-Mart Stores, Inc., 699 So.2d 1081, 1086 (La. 1997).

This case revolves around the second element, that is, whether Lowe's either created or had actual or constructive notice of the injury-condition prior to Hamilton's fall. Neither party contends that Lowe's created the condition or had actual notice of it. Summary judgment turns on constructive notice. Under Section 2800.6(C)(1),

> "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

"The Louisiana Supreme Court has interpreted [the constructive notice] statute to mean that the plaintiff has the burden of showing the dangerous condition existed for some discrete period of time; it is not enough simply to show that the condition existed before the plaintiff's injury." McDowell v. Wal-Mart Stores, Inc., 811 F. App'x 881, 883 (5th Cir. 2020), citing Adams v. Dolgencorp, L.L.C., 559 F. App'x 383, 385 (5th Cir. 2014) (per curiam). The LMLA "places a heavy burden of proof on plaintiffs in slip and fall cases." Id., citing Bagley v. Albertsons, Inc., 492 F.3d 328, 330 (5th Cir. 2007).

5

To demonstrate constructive notice, "the claimant must come forward with positive evidence showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence." White, 699 So.2d at 1082. "Whether the period of time that a condition existed was sufficient to provide a merchant with constructive notice is a fact question that must be submitted to the jury." Bagley, 492 F.3d at 331. Yet, there still remains the prerequisite showing of some time period. See id. While there is no bright-line rule, "some positive evidence is required of how long the condition existed prior to the fall." Bagley, 492 F.3d at 331. In McDonald v. Brookshire Grocery Co., 807 F. App'x 341 (5th Cir. 2020), the Fifth Circuit held that a district court had correctly concluded at the summary judgment stage that the defendant grocery store was not liable for plaintiff's injuries where the plaintiff "presented no evidence establishing that a sufficient time elapsed between the floor cleaning and [plaintiff's] injury such that [defendant grocery store], through the exercise of ordinary care, could have learned that there was a slippery substance on the floor." McDonald, 807 F. App'x at 343-344, citing White, 699 So.2d at 1086 ("To prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care."); cf. Duncan v. Wal-Mart La., L.L.C., 863 F.3d 406, 410 (5th Cir. 2017) ("Without any 'positive evidence' that Wal-Mart 'created or had actual or constructive notice of the condition which caused the damage,' as § 9:2800:6 requires, [the plaintiffs] cannot maintain their merchant-liability claim.").

To carry her burden, Hamilton must provide some "positive evidence" that the alleged cat feces was on the floor for some period of time. Hamilton herself testified that

she did not see anything on the floor before she fell.  See Record Document 14-2 at 33.  She admitted that she did not know how long the feces was on the floor prior to her fall and did not know of anyone – including a Lowe's employee – that knew how long the feces was on the floor.  See id. at 37.  Hamilton points to the deposition testimony of Calvin as evidence that the cat feces was on the floor for some period of time – maybe up to 30 minutes –  prior to the fall.  See Record Document 16 at 6, 10.  Calvin, the Garden Center cashier, testified that she had taken a break shortly before the incident involving Hamilton and walked back to her station approximately 30 minutes prior to the accident.  See Record Document 14-4 at 72.  She stated that she did notice anything when she walked back from her break and, more specifically, did not notice animal feces when she walked back from her break.  See id. at 71.  She further testified that she did not notice any cat feces on the ground during the 30 minutes leading up to the accident.  See id. at 72.  At best, the aforementioned deposition testimony is a negative inference.  It is not positive evidence of some time period.  Hamilton also offers no evidence of any "unique characteristics" of the cat feces that would indicate that it had been on the floor for some period of time.  In fact, there is deposition testimony the cat feces was wet, appeared fresh, smeared, and appeared to be moist.  See Record Documents 14-4 at 81; Record Document 14-3 at 48.  Hamilton has offered no positive evidence indicating that the cat feces was on the floor for such a period of time that Lowe's should have discovered its existence.  She has failed to raise a genuine dispute of material fact as to constructive notice.

Rather than offer evidence to satisfy her burden on the temporal element of constructive notice, Hamilton generally speculates that Lowe's employees should have

seen the offending cat or smelled or seen the cat feces.  See Record Document 16 at 3; Record Document 16-1 at 2.  She questions the reasonableness of Lowe's employees allowing pets in the store and the store's cleaning policies and procedures.  See Record Document 16-1 at 2.  "However, her burden is to provide positive evidence 'that the [cat feces] was on the floor for [some] length of time.'"  Washington v. Wal-Mart Louisiana, LLC, No. 16-1403, 2018 WL 2292762, *6 (W.D. La. May 17, 2018), citing White, 699 So.2d at 1086.  The evidence Hamilton relies upon to demonstrate constructive notice is that Calvin or other Lowe's employees could see the area of the floor where she fell, should have watched for and warned customers about the presence of animals and/or animal feces, and/or should have had better cleaning procedures in place.  Yet, this is not positive evidence that any cat feces was on the floor for some length of time prior to her alleged fall.  "Any negative inference that can be drawn from her [proffered] evidence is impermissible under the Louisiana Supreme Court's interpretation of the Merchant Liability Act."  Washington, 2018 WL 2292762, *6.  As Hamilton has not established a factual dispute as to Lowe's constructive notice of the cat feces, Lowe's is entitled to summary judgment.

### III.     Conclusion.

Because Hamilton has failed to raise genuine disputes of material fact regarding Lowe's constructive notice of the cat feces in which she allegedly fell, Lowe's is entitled to summary judgment.  Accordingly,

Lowe's Motion for Summary Judgment (Record Document 14) be and is **GRANTED**.  All of Hamilton's claims are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 22nd day of February, 2021.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT